If we could wait just a moment to clear the Court. Good morning, Your Honors. Bob Stump for the appellants, Huntington Restaurants Group and the other appellants. With the Court's permission, I'd like to reserve five minutes for rebuttal. You may, and basically, this is not – this is not a case with a huge record or a lot of legal issues, so I don't think you should feel compelled to use all of the time that's been allotted. I take the Court's suggestion and face it out, Your Honor, and I'll get right to it. I got involved with this case very late in the game, about a year ago, and by the time I got involved, my client was facing almost a $25 million default judgment. Garnishments were taking place, the company was on the brink of bankruptcy, 5,000 employees. It was a tough situation, and my task was pretty formidable, and that was not only to ask this Court to stay the matter, but to do so without a bond. And that I had never achieved in my career, but I thought I would take a whack at it, and the reason I did was I became very convinced early on that something very wrong happened in this case, both from a legal standpoint and from a factual fairness standpoint. And because of that, I pursued the task, and ultimately, we did get a stay pending appeal without a bond. Now, what happened from a legal standpoint? What happened here, of course, was the clerk, not the district court, but the clerk entered a default judgment. Did Judge Martone give you the stay? No, this Court did, Your Honor. That we did. Yes. Judge Martone refused. I came back to this Court. And I thought that was a fairly extraordinary result. In any event, from a legal standpoint, something very wrong happened in the sense that the clerk entered a default judgment, even though my client, Huntington, had appeared in the action within the meaning of appearance under Rule 55b. And, of course, that's a much broader kind of standard. For a theory of constructive appearance? It's – I'm sure that's not exactly the phrase. Mueller never actually put in an appearance, did he? He did not, Your Honor. And he didn't send a letter to the opposing side memorializing the understanding that apparently only Mr. Miller had, as I read the record, that agreement had been made not to proceed with the litigation that had been filed in Arizona. All of those facts are true, Your Honor. The legal point, however, is that if you read this Court's decision in In re. Roxford Foods, the 1993 decision, you'll see that it's well established that appearance, that phrase, within the meaning of Rule 55, is quite different and much broader than a formal appearance that you would do by filing a response of pleading or an answer or something like that. The test under In re. Roxford Foods is, has the defendant engaged in acts that show a clear purpose to defend the action? In that particular case, we had a bankruptcy trustee who never filed an appearance either, but was actively litigating the – But your – your client, as I understand it, has never disputed that it owed the money that it borrowed. The question is, what was the value of the franchise assets that were sold in the southeastern United States as a credit against whatever is due in Owing, is that right? That's absolutely correct, Your Honor. But it's an issue that has millions of dollars hanging in the balance. It is the – But that's all – but that's all you ever said. You never said really how the Court was wrong. You just said, they're millions of dollars off. Well – I mean, that's pretty general, you know. That's like – I mean, when we're talking about a whole bunch of millions of dollars and then you said that it's millions of dollars off, when you came back seeking assistance from the Court and seeking relief, you could do no better than to say that it was millions of dollars off. That's pretty general when you're attacking whether it's a sum certain. Well, I think regardless of the proof we went – we adduced, and of course, we did this on 48-hours notice with payrolls hanging in the balance, and after not having any notice for almost a year. But – but – Well, you did get a – you did get a – Mr. Miller got a letter, as I understand it, from opposing counsel after the settlement negotiations broke down saying, basically, we're going to stand on our legal remedies and, you know, Katie barred the door. And he did nothing. Your Honor, that's – there was a letter on April 18th, 2002, saying, amongst many other – responding to business points – it's like a four-page letter, and it's there somewhere. Three days after that – But you're not arguing that that's not sufficient notice? Or are you arguing – Well – That it was lost in the noise? I – I'm sort of collapsing two arguments here, and they're very important. Under Rule 55, if either of two things is present, the clerk has no authority to enter the fault. Well, Mr. Stumpf, I – you know, I practiced law before I became a judge, and I'm very empathetic to the situation that your client and Mr. Miller created here. But it seems to me that there – as Judge Martone pointed out during the telephone hearing, that there was an obligation on counsel to do something affirmatively, even if it were simply to write a letter back saying, you know, this is to confirm our understanding. He did nothing. All right. I grant that. And if he had done that, we wouldn't be standing here. Right. What I'm saying is that under Rule 55, the clerk lacked legal authority if either of two things was present. Number one, if my client appeared in the action in the broad meaning of the itinerary for food, and that's a vitally important decision, vitally important, then the clerk was without legal authority to enter the default without regard to one other thing. And I would certainly invite the Court in the strongest possible decibels to go back and review the facts in that case and compare them to what happened in our case. The default was entered in April. The default judgment was not entered, requested to be entered until 8 months later. During that time, there were nine lawsuits pending in the State of Florida where we appeared, we vigorously litigated this action, and the only issue there was the deficiency. That was the same issue that was being litigated in California, although it was not supposed to be litigated. Everybody agreed that we were going to litigate that issue in Florida. As late as December, the same month, when they, without one shred of notice, not one of the deficiencies issued in the State of Florida in these nine pending lawsuits, there were countless communications. If anybody had picked up the phone and said, you know, you've got to file an issue, you've got to do something, is there any doubt in anybody's mind that we would have done that? And under N. Ray Rockford Foods … Well, but you got a four-page letter in April saying we're going to war here, settlement negotiations have broken down, we're relying upon our legal remedies, and sure enough, you know, the firefight starts in Florida, but your client knows there's a lawsuit that has been filed against it in the District of Arizona. It just seems that any prudent litigator at that point would do something. Your Honor, what can we say? Of course, Mr. Miller acknowledged that. He, you know, he trusted the relationships that he thought he had with opposing counsel. That was a mistake. We agree with that. That's what Rule 60 motions are for. It's almost always a mistake. But isn't … Yes, I agree with that, Your Honor. Of course I agree with that. But didn't the court … there was, in the district court proceeding and deciding whether to give you the relief you sought, considered what Mr. Miller said and also considered what the other side said by way of declaration and resolved those issues. So what sort of deference do we have to give to the district court on that resolution of those factual issues? The same deference that this Court gave in N. Ray Rockford Foods, which is to say the legal standard is indeed abuse of discretion. I acknowledge that. However, when the facts are … the facts that show an intent to defend are undisputed, the inferences are a matter of law for the court. And if you … I would, again … Does it help you if we characterize the activity as sort of carelessness as opposed to intent to defend? Absolutely. Because one of the criteria under Rule 60, of course, is has the party against whom the default has been entered been guilty of culpable conduct? And if you go back to your TCI group life insurance case, it says, is the conduct inconsistent when there's no explanation of the default, inconsistent with a devious, deliberate, willful or bad failure to respond? Whatever happened to Corp. Mr. Miller, he was not any of those things. So the way to give you the relief you're seeking is to say that he was careless. No, that he was not guilty of culpable conduct, that we had a meritorious defense as to the amount of the judgment, and that there was no prejudice, which, of course, this Court, I think, must have acknowledged when it granted the stay without a bond. Well, yes, but several more months have gone by, and the defendant still has a substantial amount unsatisfied on his judgment. Isn't that prejudice that the district court may properly consider in evaluating the merits under the rule? You certainly may consider it. But I would again invite your attention to TCI group life insurance plan 244F3rd at 701, which talks about the default, that to establish prejudice, the default must result in greater harm than simply delaying the resolution of the case. This may have to die, change financial condition. There's none of that evidence in this record. May I proceed to one other point? I fear that I'm not communicating effectively here, and this is very important. There's another reason why the clerk is without authority, was without authority to enter a default judgment in this case under Rule 55. And I have already talked about we appeared. And again, if you compare the facts in our case with Roxford, we appeared. The appearance is what exactly? The appearance. Well, you're talking, you're either you've got direct mail and then you have the case that you cited that you said supports your, it's, I've got them both written, Roxford Foods. So you're sort of, we've got those two cases framing your issue, right? Yes. Here's direct mail where the Court declined to give relief in terms of what I see. And I think you're not at either point. No, I'm way over here, Your Honor, in my view. Oh, okay. I'm putting you more in the middle. I would say that one of the factors involved is where the party is negotiating, were they intending to defend the case that were? If you look at the court docket to see what was done here that would appear, what is there? In Arizona? Uh-huh. Very little in Arizona. However, if I may, that's a fair question. If you go to, again, NRA Roxford Foods, the question there, and I anticipated that somebody might ask this question, so I put a little post-it here. At issue here, then, is whether or not the trustee, who was the party against whom the default was entered, contact with the other party in regard to the related bankruptcy action, in the related bankruptcy action. So there was a bankruptcy action, there was an adversary proceeding. What happened was the trustee inadvertently didn't appear in the adversary proceeding, but did litigate very actively in the related bankruptcy proceeding. In our case, we had one issue. Same court. It was the same court. That's true, Your Honor. I acknowledge that. But we have the same issue being litigated in nine separate lawsuits. Yeah. Okay, so that's my argument. I also have going for you, if I might make an argument for you, is that you did engage in negotiations. Absolutely. So, I mean, if I were to say what I think you have going for you in weighing the balance is that you engaged in negotiations, and there's no dispute about that in the record. Now, there is dispute in the record about whether it broke down and then the letter. That's problematic. But then also, you actively engaged in litigation in another jurisdiction. So, I mean, to me, those are your two strongest points. There's another point. We did, of course, file an acknowledgment. We signed an acknowledgment of acceptance of service, which was filed with the district court. And we did so, at least according to Mr. Miller, upon the as part of the concept that, you know, if things break down, if we can't resolve it, then, of course, we'll litigate. And, of course, the best evidence of that is we did precisely that nine times in Florida. If you go back to Inouye v. Oxford, it says, has the adversary process stopped? Do we have just sort of a recalcitrant litigant who doesn't you really don't think it's going to appear? That cannot be our case. Our case, we had, as I say, these nine lawsuits pending. There was no doubt. And I understand this was a new concept to me, Justice Talman, about the broad notion of appearance. Yeah. Because it started with Ashok Livermore in 1990, and it's been adopted by this Court in three separate decisions. It's very important. But there's an even easier way to get where I want to go, if I may. I know I'm running out of time. I'm speaking too quickly for my own good. I apologize. You're doing fine. If the claim at issue is not for a some certain or an amount that can be made certain, the district court clerk may not enter a judgment by default. But the district court clerk can't know that unless you provide some evidence. Because the only evidence before the district court clerk was very properly the plaintiff's affidavits and declarations establishing the four agreements, the formula under the agreement for calculating principle and interest, and what those easy mathematical computations yield. Justice Talman, you're right, but you prove my argument. If that were true, that phrase would be meaningless. Any time, anybody who, in this case, gave no notice, even though we're negotiating, fighting hard in these cases, anybody came into court, a plaintiff, and filed an application for the full judgment, just made a lot of numbers. Okay, so determining whether there was a some certain, that was a factual issue that the district judge dealt with in your relief, correct? Not many can agree. Well, but what I saw is you had what the clerk entered, and what was offered, the best that the losing party offered was that the amount differed by, not that they contested they had liability, but the amount differed by millions of dollars. I mean, that really is very nonspecific. Well, if we had been given notice and an opportunity to present this evidence, we would have done that. There was evidence. Notice beyond the letter. In other words, you want, you're talking about notice that a default judgment has been entered, and we're now about to present for the clerk's entry the actual amount of the judgment. Certainly in that context, among many others, Your Honor, we have no opportunity to present this evidence, although we did so in response to your question, Justice Kelloggan, is that we know that we had retained an expert to do this very task. And may I point out the obvious thing. At this moment in time, the parties were litigating that very issue with experts in Florida. That was all we were talking about in Florida. But so can't you do better than dip millions of dollars? I mean, if you mean it has been going on. The negotiations have been going on. The litigation has been going on. Right. Why couldn't you have said you're positioning, positioning our client, this is the amount that our client does, is an issue, and it's this much different? Because the parties were engaged in discovering expert work in Florida to determine it. We have 13 restaurants, Your Honor. This is not a question of looking it up in the blue book. I mean, it's a very significant issue. And that proves my point. How could the issue is, Mr. Kerr? And you didn't take a position in the Florida litigation as to how much was? We were going to hold hearings and take a position in court in a contested evidentiary matter, as you would do in any contested bankruptcy proceeding or related proceeding. That's not unusual. If I may say something, we did include as part of our submission, and the other side has objected to it. We did have a report, and we offered this as part of this record to illustrate what we would have proved. We had a report from Deloitte saying that the properties in question were worth more than the debt owed. What was the theory of the nine lawsuits in the South? How were they initiated? Well, they were initiated because there were nine properties in Florida, each of which was going through a foreclosure proceeding. Okay. So there is – it was essentially a judicial foreclosure – nine judicial foreclosure proceedings? Is that what those nine lawsuits were? Essentially, Your Honor. And then we agreed to friendly foreclosures. And then the issue was what was the amount owed? Right. In which case you prove up that there was an agreement. It was secured by the asset of the franchise, and now we are seeking to foreclose. And we didn't contest foreclosure. Okay. The question is how much did we owe them after the foreclosure. We said we didn't owe anything. You've used – almost used your time, if you want to say a little more. Very good, Your Honor. Thank you. May it please the Court, Kristen Miles, Margaret Tolson Olson for appellee. You have to keep your voice up. It's just a recorder. It's not a microphone. The two overriding themes pervade Appellant's position. First, they've consistently tried to say that the district court abused its discretion for not taking into account or hearing evidence that they never presented to the district court, and otherwise not doing things that weren't requested of the district court. Secondly, they've consistently failed to follow the rules, both the district court rules and the rules of this court. And they've also argued that different rules should apply to them. So the questions are whether it can – this court can reverse for abuse of discretion under those circumstances. The principal question appellee has raised is whether there's been abuse of discretion for failing to set aside the entry of default and for failing to set aside the default judgment under Rule 60b. The connection with the entry of default is only three factors that the court looks at, whether there's a meritorious defense, whether there's culpable conduct, and whether there's prejudice to the plaintiff. Each one of those has to be proven by the person seeking to set aside the entry of default. And each one independently is sufficient, if not proven, to defeat that motion. Excuse me. Appellants have tried to argue another issue as well here on the entry of default, and it's important to clarify. They've argued that they've made an appearance under the cases following Livermore and Roxford Foods, et cetera, and that, therefore, they can't be subject to entry of default by the clerk. That's not correct, just as a threshold matter on entry of default. Entry of default, unlike default judgment, doesn't turn on the word appearance. It turns on the words plead or defend. And it's been interpreted to mean file an answer within 20 days in accordance with Rule 12. So there's no question but that that requirement was not met here, that they did not plead or defend. Turning to the meritorious defense issue. I just have to ask you really quickly. There was, there's, there have been some declarations, I think, that the other side has wanted to add to the record. Yes. Is that correct? And these were declarations that were not before the district court? Correct. Let me explain that because it's sort of a two-part answer. One of the declarations, I believe, was submitted to the district court at the time they sought a stay from the district court. In other words, after the district court's decision, that's an issue here. The other three were submitted for the first time in this court during the stay proceedings before this court. None of these four declarations that we've moved to strike were part of the record that is under review at the moment. They did not move to augment the record. They just put them in, and we've moved to strike them. Likewise with the Deloitte report. That wasn't before the court at the time of his decision either. On the issue of meritorious defense, the principal point here is that the district court held that and found correctly that liability wasn't disputed and that that was enough to show no meritorious defense. That clearly is correct. There is no basis for saying that a dispute over damages is sufficient to prove a meritorious defense. What is the strongest authority on that? The strongest authority we have is, there's a number of cases. We cited a case called United States v. 55,000-some-odd dollars in currency from the Third Circuit, which said that showing of a meritorious defense is accomplished when allegations of defendant's answer, if established at trial, would constitute a complete defense to the action. Was that a forfeiture? I believe so, yeah. What about the, do we have any cases on this? I don't know if there's any Ninth Circuit cases that are published. The one case that addresses the issue, which we did not cite, is not published, but it held clearly that a defense cannot be, a mere dispute over damages cannot be a meritorious defense. In that case, a case called Shapkin, the Court. You can't cite it. It wasn't citable. Someday you may be able to, but not today. Right. So it's a question, it is a question of first impression before this Court as to whether a dispute over the amount of damages can be sufficient. Do we need to reach that, in your view? Well, for a number of reasons, you don't necessarily, because the Court had three separate findings, meritorious defense, culpable conduct, and no prejudice and prejudice. They're disjunctive, right? And they're disjunctive. Each one of them, the appellants would have to defeat each of those findings in order to justify setting aside the entry of default. Just briefly on this issue, because it is somewhat of an interesting issue legally, but the point is that entry of default doesn't involve damages. Damages don't matter at that phase. It's only at the judgment phase that damages even come into play, and even then it's subject to a totally different scheme than the issues at trial, the liability issues. But at the entry of default stage, all that's required is a failure to plead. So to say that in the point of the meritorious defense test, and this has been recognized in numerous sources, is to say, would the result be different at trial than it is through the entry of default? And if the liability is not disputed, the result wouldn't be different. Likewise, with the issue of damages, there would be no different result because the entry of default is resolving only liability. It doesn't resolve damages. Okay. So that goes to whether or not the district court properly denied the Rule 55C motion. Correct. But now then we would have to turn, if we can give any relief at all, to Rule 60B. Correct. Now, there's two principal issues in Rule 60B, apart from these same issues, the same issues of meritorious defense, culpable conduct, et cetera. That's the issue of appearance and the issue of some certain. And I'd do those in that order, unless someone would like it in a different order. I'd add one other small issue, and that's the issue of notice. Although it isn't, there's no, it's not an element of 60B relief, but it's been discussed so extensively in the papers in here that I thought it's worth touching upon. There is no notice required for entry of default. If there's been no appearance, there is no notice required for default judgment for any kind of proceeding, whether it's by the clerk or by the court. It doesn't matter. Even if you go directly to the district court to seek entry, to seek default judgment, you do not need to give notice to a party that has not appeared. Likewise, with the entry of judgment. After judgment is entered, there's no requirement of notice. Rule 77d, which discusses when notice of judgment is required, does not apply, it does not require notice to a party who's in default for failure to appear. So just to put that issue aside, that, it all turns on the appearance issue. And here, as has been noted, there was no, no filing whatsoever with the district court in this case. So the only real arguments are what is the case law here in this circuit and what are the three issues they've raised are the proceedings in Florida, the settlement discussions, and the supposed agreement and understandings among counsel. The understandings among counsel have been pretty much dismissed by the district court. I don't think we could walk through that evidence, but the evidence more than supports the district court's conclusion. I don't think you hear that. We've read the briefs and the record. We understand what the evidence is with regard to that. Okay. And then on settlement discussions, the principal authority on that is this D.C. Circuit case from 1970 called Livermore, which has been cited a number of times by this Court. It's only been followed once in the sense that the Court actually found there to be a basis for setting aside a default judgment. That was Roxford Foods. That's the only time it's ever happened in this circuit under citing Livermore. Roxford Foods actually didn't involve settlement, but it was quite a different situation from here. You had a trustee in bankruptcy, and out of that very same proceeding where he had been appointed trustee and he had been before the Court on several occasions in an effort to find counsel, and he had been given until a certain date to find counsel, then was sued in an adversary proceeding arising out of the same exact case. We understand. So it's a highly distinguishable situation. In addition to the factors that have been noted, the Court expressly relied, this The other case, Wilson, that went the other way, also citing Livermore, I think is more germane. There, there were settlement discussions. The Court acknowledged that, nonetheless found there not to be an appearance in part because the settlement discussions were not sufficient, standing alone, and in part because there had been a letter, actually, in that case, two letters from the other side, the Plaintiff's counsel, saying, look, we're going forward. And in that case, the letters expressly referenced default. Here, they simply said, we're going to continue to prosecute all existing litigation. But, again, that was five days before the application for entry of default. That was April 18. That letter went out. So I think this case is sort of much more in line with Wilson than it is with Roxford Foods. What, in your view, is the significance of the fact that there was litigation going on in Florida? Well, I've got to – I must disagree with a couple of factual characterizations that were just made, because there's not much in the record about those proceedings, so we've limited ourselves to what was in the record. But, in fact, they were proceedings – they were foreclosure proceedings. So those were proceedings that were necessary to foreclose on the properties. Under Florida law, there needs to be foreclosure proceedings. And in the context of that, you can raise the deficiency issue. And there were deficiency hearings at one point scheduled. My understanding is that the issue of fair market value was not being litigated at any time during these – during this proceeding. In fact, my understanding from Florida counsel is that they hadn't been – it hadn't been raised by appellants in those proceedings. None of this is in the record, right? None of this is in the record. None of this is in this Court's record. Right. None of this is in this Court's record. But I just want to dispel that notion, because that wasn't in their papers. I think it was said for the first time here that the issue of fair market value was actually being litigated at the time the default was taken. And the district court record that tells the district court about the Florida litigation. Well, the results of all the foreclosure proceedings are before the district court in the application for default. The application for default spelled out in declaration – in affidavits, excuse me, that what had happened in the Florida proceedings, that there had been the foreclosures, and what sale prices those foreclosures had produced on the underlying real estate and the underlying assets. Those were the bid amounts, correct? Those were the – You do a fair market value. Right. Those were the sale amounts. Let me just touch on – if I can skip then to set the fair market value issue, because I think it's critically important to understand a couple of points about that. First of all, what was done in the affidavit, in the complaint as well, is setting forth the terms of the loan documents, what was required, what was due, what had been received, what was still owing, et cetera. That was all laid out. There's been no dispute over any of those calculations or that any of those numbers were not themselves sums certain. The issue, of course, is whether the use of the sale price versus the fair market value was appropriate, and in the dispute over that, does that render it not sums certain. There's no cases that say, that we've found or that were cited, that a dispute over – a defaulting defendant's dispute over the appropriate measure of damages is itself sufficient to create – to take what would otherwise be a sums certain under the cases and make it not one. But – I mean, the bigger problem that we typically run into is with regard to punitive damages in a tort action, right? Or even – or even personal injury damages. Or another example that has been used is – How do you quantify pain and suffering? Right. Something like that. Those are examples that have been used. Yeah. Or sometimes something like lost profits. But in addition to that, what – what was – what was used is under Florida law, there's a presumption that the sale price in a foreclosure proceeding is fair market value for purposes of a proceeding for – I'm losing the word here. Deficiency proceedings. Excuse me. And in deficiency proceedings, if the sale price is the only evidence of – that's before the court, that is deemed to be fair market value. The mortgage or the property owner has the burden of coming forward to show it's something else. If there's no such evidence, it's an abuse of discretion under Florida law not to grant. Well, so are you saying because you presented in your declarations and in your complaint a calculation of how you came up to it and those numbers were real, the fact that someone could dispute it otherwise doesn't make it – that doesn't take away from the fact that it's a sum certain? Correct. Correct. And also the principle – And they just should have shown up and contested it, and then it wouldn't have been a sum certain, right? Or may or may not have been. Or it needs to have something after the fact to show. The other main point here is that when they – when appellants came in to seek to set aside the judgment under 60B, they had absolutely not a shred of evidence nor even an offer of proof to say what fair market value should have been or even what evidence they would have presented on that subject. Did I state their evidence in the best posture in terms of that the numbers differed by millions, or wasn't there something about that? No. That was what they said. Well, that was in their brief, actually. The brief is what said that was a millions of dollars difference, and that was based in the Deloitte report, which was not before the district court at the time the district court rendered its decision, and there was no other evidence before the court. There was just an argument by counsel that there hadn't been a fair market determination. That was the only thing that was actually before the district court at the time. Okay. Any further questions? Thank you. You know, it's not a long time, and I'll try to be brief, but this is very important. I think the ---- Counsel, just briefly on the things that you've tried to introduce, and they have a motion to strike on. It doesn't ---- none of my argument depends upon that. I pointed out in the footnotes that, for example, the Deloitte report I was doing only as an offer of proof. I will, you know, my argument does not depend one iota on that stuff. Okay. I don't want to ask any more. I don't care about that. What I do care about is the Florida litigation. I'd like to respond to Justice Callahan's, you know, what was in the record regarding what was going on in the Florida litigation. It's a fair question. And the answer is if you look at the two declarations, which are at supplemental excerpt of record 87 through 96, you will find what I have told you this morning, that there were nine lawsuits going on in Florida to determine the deficiency. And I just ---- it occurred to me, if this ---- if we're dealing with a some certain, if this is a some certain, what are we doing? Why are we retaining experts? Why are we litigating some certain? A some certain is like a promissory note or that has a stated interest rate and a number of days. It's not a value of a business. If you need experts to come in and opine as to the value of businesses, it's not a some certain. It can't be a some certain. Well, if we accepted your position while other litigation was going on like that, could there ever be a some certain in a case like this? No, not in a case like this, where the issue is the ---- So you're saying someone, they could never take a default? No, no. I'm not going to use case determinants on what a case like this is. If the issue is how much is the fair market value of restaurants, that's not ---- it cannot be a some certain. If it's a promissory note, sure, no problem. And I did want to say one last thing. I know I'm trying to court's patience. There was a statement. I must respond to it. I understand the importance. Go ahead. It is well established in Florida law. I can provide ---- I've got a citation right here that I got yesterday just to make sure that under Florida law, the amount that is received in a foreclosure sale, in this case in credit bids by the secured party, is not conclusive of fair market value. If it were, they certainly wouldn't have been litigating the issue in nine separate proceedings. They would have said, well, that's what you got in the foreclosure. But you would agree that in the absence of any evidence except for the bid amount, Florida law says we presume that it is fair market value. Presumption. Right. Which can be rebutted with evidence. Which we were trying to do. That's all we want. All we want in this case is the chance to ---- if the Court affirms what's going to happen here is you're going to create a miscarriage of justice, and I mean that advisedly, because what's going to happen is credit bids far below the fair market value of the property are going to be used to establish the amount of the deficiency. All we want is a fair chance to establish the deficiency. That's what we were doing in Florida. We were doing it diligently, effectively, and that's all we want in this case. And that's what ---- that's how this Court should rule. Thank you. Thank you. The case just argued is submitted for decision. That concludes the Court's calendar for this morning, and the Court stands adjourned. Thank you. Thank you.
judges: Schroeder, Tallman, Callahan